FILED
 2010 Aug-30  AM 10:25
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DONNA A MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-G-2349-W |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Donna A. Murphy, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

      (5)      whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

      In the instant case, ALJ Kenneth Wilson determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform less than a full range of light work. [R. 18]. Accordingly, the ALJ found the Plaintiff not to be disabled.

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

      In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the

alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases.  These problems have been recognized by the courts.  In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features.  See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995).  Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.  The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.  All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.  There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests.  Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th

>Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307.  Other courts have also recognized that fibromyalgia can be disabling.  Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its elusive nature, the presence of fibromyalgia can be objectively verified in some cases.  As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpation.  Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed.  Kelly at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections).  Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

**THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED**

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a

hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the

need to expedite disability claims." Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.

### WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling.  In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

### DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "[f]ibromyalgia, dysthymic disorder and chronic fatigue. . . ." [R. 17]. However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ." [Id.].  He also found that the plaintiff's "plantar faciitis, Achilles tendonitis [sic], hypokalemia and status-post ankle fracture" are not medically determinable severe impairments.  [Id.].

Without question, the plaintiff has an underlying condition which could give rise to disabling pain.  In applying the 11th Circuit's pain standard, the ALJ found that:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment.

[R. 19].  This conclusion is not based on substantial evidence.

The plaintiff was 50 years old at the time of the ALJ's decision.  [R. 52]. At the hearing, she testified that she left her job of 27 years at a bank because of her impairments.  [R. 33-34].  She was working as a teller, but stated that her mental fog, forgetfulness and a tendency to make mistakes influenced her decision to retire.  [R. 34]. Additionally, she testified that the pain medicine she was taking contributed to her mental state and caused drowsiness.  [Id.].  She stated that she cannot sit for longer than 15 minutes before experiencing pain.  [R. 35, 37].  She testified:

> Most of the time, I'm up and down, you know, even in the night, I'm up and down all night and I don't get a whole night's sleep because I have restless leg syndrome and all that and, you know, I'm jerky and right now, I'm going through the menopause thing with the hot flashes and all that too. and I don't even sleep through the night because I have to get up several times.

[R. 36].  She testified that trigger point injections give her temporary relief in her shoulders, "but they can't give me any shots, you know, up in my head and they can't give me [sic] in my hips and in certain places."  [R. 38].  She stated that she spends a

9

portion of each day lying down, depending on whether she is having a good or bad day, the weather, and side-effects from her medications. [R. 42-45]. The plaintiff testified that on a bad day, she would have difficulty lifting a gallon of milk. [R. 43-44]. She can walk for about ten minutes before resting on a good day. [R. 44]. On good days with medication, her pain goes below an eight on a one to 10 scale, but her pain medication causes her to be "foggy headed" and she needs to lie down. [R. 44-45].

      Besides concluding that the plaintiff's pain testimony is not credible to the extent that it is inconsistent with the ALJ's residual functional capacity assessment, the ALJ gives no reasons[1] in his opinion for discrediting the plaintiff. By failing to articulate reasons for failing to credit the plaintiff's pain testimony, it follows that her testimony must be taken as true. The ability to perform the limited activities testified to by the plaintiff does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities

---

[1] The only statement by the ALJ which might be construed as a reason to question the plaintiff's credibility is this:

> In sum, the above residual functional capacity assessment is supported by the fact that the claimant testified during the hearing that she could have continued her job at a bank, but she felt that she began to make too many errors. Accordingly, the undersigned concludes that she could perform jobs less complex than that of a bank teller.

[R. 20]. This one statement by the plaintiff, taken by itself, is insufficient to be discrediting. Moreover, the plaintiff's 27-year history of employment with the same employer bolsters her credibility.

of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See <u>Yawitz v. Weinberger</u>, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's failure to articulate reasons for rejecting the plaintiff's pain testimony renders his decision to be not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he

Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

Under this circuit's pain standard, objective proof of the pain itself is not required. Moreover, the medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). As Judge Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

The ALJ also acknowledged that the plaintiff has the severe impairment of dysthymic disorder. [R. 12]. Indeed, the record contains a December 9, 2008, clinical analysis by R. Wayne Williams, M.A., L.P.C., an outpatient therapist, and concurred with by Timothy S. Baltz, M.D., a psychiatrist, in which the plaintiff was diagnosed as having

Major Depression, recurrent. [R. 307]. Her Global Assessment of Functioning[2] was 45. On January 7, 2009, Dr. Baltz diagnosed Dysthymic Disorder, early onset type, with multiple somatic complaints, including chronic fatigue syndrome, fibromyalgia, and multiple family situational stressors. [R. 311]. Her Global Assessment of Functioning was 55 on February 17, 2009. [R. 308]. On March 11, 2009, therapist Williams noted that the plaintiff "has exhibited high levels of ongoing anxiety with related symptoms such as poor short term memory and a decreased ability to stay focused on even routine tasks." [R. 320]. Therapist Williams stated that he did not feel the plaintiff would be

---

[2] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32. Several courts of appeal have, in unpublished or nonprecedential opinions, considered the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and of itself determinative of disability. See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.); Stalvey v. Apfel, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work."). But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

13

able to be successful at any type of employment, and he expected "this situation to continue for more than the next year." [Id.]. Relying instead on a Psychiatric Review Technique form completed May 10, 2007, by a State Agency non-examining psychiatrist, Frank J. Nuckols, M.D., the ALJ concluded that the plaintiff did not meet the "paragraph B" criteria of listing 12.04. [R. 18]. Because the plaintiff's uncontradicted pain testimony establishes disability, the court finds it unnecessary to determine whether this finding is supported by substantial evidence.

> At the hearing, the vocational expert testified:
>
> Q: But I'll ask, based on the testimony, what effect would that, would the limitations that she outlined in her testimony have on the jobs that you cited?
>
> A: Well, I, I think that she indicated that she had good days and bad days and, perhaps on good days, could perform some kind of work, I believe that's pretty much the gist of it. But to the extent that she had days when she would be totally unavailable to work because of pain or limitation in the use of her hands or just the need to pretty much lie around and rest all day, that would certainly preclude any kind of full time work activity that she could do.

[R. 70]. The vocational expert also testified that the jobs he identified "would require consistent attendance on the part of, of the individual." [Id.].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In

such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 30 August 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.